IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2011 Session

## VENUS L. LOWERY v. LARRY G. WOMBLE, II

**Appeal from the Chancery Court for Coffee County**
**No. 01374     Vanessa Jackson, Chancellor**

---

**No. M2010-01102-COA-R3-CV - Filed June 28, 2011**

---

In this child-support matter, Father appeals the trial court's determination of his parenting time and income for the purpose of setting his child support obligation. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Larry G. Womble, II, Lynchburg, Tennessee, Pro Se.

Terry D. Gregory, Tullahoma, Tennessee, for the appellee, Venus L. Lowery.

### MEMORANDUM OPINION[1]

## I. Factual and Procedural History

Venus L. Lowery ("Mother") and Larry Glen Womble, II ("Father") were divorced on April 4, 2002 on the grounds of irreconcilable differences. The Final Decree of Divorce incorporated a Marital Dissolution Agreement and Permanent Parenting which named Mother the primary residential parent of the parties' two children and set Father's child

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

support obligation at $200.00 bi-weekly. The Permanent Parenting Plan set Father's parenting time every other weekend from Thursday at 6:00 p.m. until Sunday at 6:00 p.m. and on the off-weekends on Sunday afternoons at 2:00 p.m. until Monday morning at 8:00 a.m.

Beginning in 2003 and continuing until October 2009, the parties filed various petitions requesting modifications to their child support obligations and parenting time. The case is presently before the Court from the trial court's April 13, 2010 Order which stated as follows:

> This matter came before the Court on the 21st day of December, 2009. On November 10, 2009, this Court entered an Order denying both parties' request to change the residential parenting schedule because neither party had proved by a preponderance of the evidence that there was a material change in circumstances affecting the children's best interest which would warrant modification of the Court's prior orders. Subsequently, Larry G. Womble filed a pro se request for the Court to reconsider its decision and to modify the amount of his child support obligation. At the hearing on December 21, 2009, Mr. Womble asserted that he was medically disabled and, therefore, unable to work. It was his contention that Assistant Attorney General Tim Reed had failed to take into consideration this medical condition and resulting disability in calculating the child support obligations of Mr. Womble. Mr. Womble further asserted that percentage of time that the children spent with him, as the non-custodial parent, had not been correctly calculated, and he should be credited with a higher percentage of time.
>
> At the hearing on December 21, 2009, this Court declined to alter or modify it [sic] Order entered on November 10, 2009. However, upon the agreement of Mr. Womble to authorize a release of his medical records from Dr. Roth and Dr. White to Assistant District Attorney Tim Reed for review, the Court requested General Reed to review the medical records as they pertain to Mr. Womble's assertion that he is disabled and unable to maintain gainful employment. In addition, the Court stated that it would review the calculation of the percentage of time that the children spent with Mr. Womble to determine if it was correctly calculated.
>
> On March 29, 2010, this Court received a copy of the medical records of Dr. Roth and Dr. White that were furnished pursuant to Mr. Womble's authorization. These records do not show by a preponderance of the evidence that Mr. Womble is disabled and unable to be gainfully employed. After reviewing the entire record in this matter and based upon the current parenting

plan, the Court finds that the calculation of the percentage of time that the children spend with Mr. Womble appears to be correctly calculated.

Therefore, Mr. Womble's request to amend or alter the previous Orders of this Court as to the amount of Mr. Womble's child support obligation is denied.

On April 20, 2010, Father filed an appeal of the April 13 order *pro se.*[2]

## II. Discussion

After reviewing Father's brief on appeal, we discern the following issues for our review:

1. Whether the trial court erred in computing the number of days Father exercises parenting time for purposes of his child support obligation?

2. Whether Father's income was correctly calculated based on his contention that he receives only $800.00 per month due to his disability?

Father contends that the trial court miscalculated the number of days he exercises parenting time for the purpose of setting child support. Specifically, Father asserts that he exercises parenting time 132 days per year rather than 114 days per year. In support of his contention he cites a November 3, 2008, court order which modified his parenting time as follows:

. . . the Court finds that the Parenting Plan as originally entered herein should be confirmed and remain in full force and effect with the exception that the minor children of the parties are to be delivered each morning by 6:45 a.m. to the home of [Father] on each day the children are in school and [Mother] is working and picked up each afternoon following school's recess by [Father's] wife . . . . with the minor children being kept in the home of [Father] until [Mother] picks the minor children up following the end of her work day . . . .

---

[2] Attached to the Notice of Appeal was a hand-written four page statement of Father. According to Appellee's brief, Mother objected to this statement and on September 22 the court ordered Mother to submit her own Statement of Evidence, which she did on October 11. As an appendix to her brief, Mother included an Order entered November 17 in which the trial court adopted Mother's statement of the evidence.

Father argues that pursuant to Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(b)(3), he should accumulate additional days of parenting time for the hours he cares for the children before and after school each day. Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(b)(3) states as follows:

> No more than one (1) day of credit for parenting time can be taken in any twenty-four (24) hour period, i.e., only one parent can take credit for parenting time in one twenty-four (24) hour period. Except in extraordinary circumstances, as determined by the tribunal, partial days of parenting time that are not consistent with this definition shall not be considered a "day" under these Guidelines. An example of extraordinary circumstances would include a parenting situation where the ARP is scheduled to pick up the child after school three (3) or more days a week and keep the child until eight (8) o'clock p.m. This three (3) day period of routinely incurred parenting time of shorter duration may be cumulated as a single day for parenting time purposes.

Mother argues that Father signed an Agreed Order on February 27, 2009 in which he agreed that he exercised 114 days of parenting time with the children and that Father's parenting time has remained the same since the entry of the Agreed Order. Specifically, the February 27, 2009 Agreed Order of Modification included a Child Support Worksheet which indicated that the children spent 251 days per year with Mother and 114 days per year with Father. With respect to the worksheet, the Agreed Order stated "[t]he parties have acknowledged that the information contained in Exhibit A is true and correct."

At the hearing on December 21, 2009, the trial court heard the testimony of Father, Mrs. Womble, and Mother regarding the number of hours the children spent at Father's home on a daily basis. Father and Mrs. Womble testified that Mother dropped the children off at Father's home around 6:30 a.m. each school day and would pick the children up around 8:00 p.m. after school.[3] Mother testified that she would drop the children off around 7:00 a.m. and pick them up around 4:00 p.m. The trial court also heard *in camera* testimony from the children, which was not disclosed to either party. In the April 13, 2010 Order, the trial court held that "the calculation of the percentage of time that the children spend with Mr. Womble appears to be correctly calculated."

We review the trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Trial courts see and hear the witnesses as they testify and are in the best position to assess a witness' demeanor and to make determinations of credibility. *See Wells v. Tenn. Bd. Of Regents*, 9

---

[3] School hours are 8:00 a.m. until 3:00 p.m.

-4-

S.W.3d 779, 783–84 (Tenn. 1999). In this case, the trial court resolved the conflicting testimony in favor of Mother, as to which we give great deference. After reviewing the record, we find that the evidence does not preponderate against the trial court's finding.

We next turn to issues concerning the calculation of Father's income. Father contends that a work-related injury and subsequent back surgery rendered him disabled and unable to work. As a result of his injury, Father receives $800.00 per month from a private disability insurance policy; Father alleges that he is unable to earn any additional income and that this change in income warrants a modification to his child support obligation.

Tenn. Comp. R. & Regs. 1240-02-04-.05 outlines the circumstances under which a child support order can be modified:

(2) Significant Variance Required for Modification of Order.

(a) Unless a significant variance exists, as defined in this section, a child support order is not eligible for modification . . . .

> (c) For all orders that were established or modified January 18, 2005 or after, under the income shares guidelines, a significant variance is defined as at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order or, if the tribunal determines that the Adjusted Gross Income of the parent seeking modification qualifies that parent as a low-income provider, at least a seven and one-half percent (7.5% or 0.075) change between the amount of the current support order (not include any deviation amount) and the amount of the proposed presumptive support order.

On February 27, 2009, Father signed an Agreed Order setting his child support at $52.42 per week and giving him a credit of $1,869.26 in "retro support." The Child Support Worksheet, which Father acknowledged was "true and correct" at the time he signed the Agreed Order, indicated that Father's monthly income was $1,134.46. In considering this issue, the trial court reviewed Father's medical records and determined that they did not show that Father was unable to be employed.

A letter from Dr. Michael J. Schlosser, dated June 19, 2009, stated the following regarding Father's lumbar surgery:

Assessment and Plan: Mr. Womble's x-rays look fine. There is no evidence of any problems postop. He continues to have back pain as well as upper back pain and leg pain that is diffuse and does not seem to be isolated to an SI-type distribution. I have explained to him that I think some of this may be just normal postoperative pain, but certainly it is difficult or me to explain all the different areas of pain he is continuing to experience. At this point postop, I think that he would be capable of returning to work. However, I would keep him on a 25-pound lifting restriction until three-month postoperative period. At three months postop, I would expect him to be able to return to activity with no restrictions.

Although Father may have some work restrictions and lifting-limitations, the medical evidence in the record does not show that Father is unable to be gainfully employed and earn an income equivalent to that which was recorded on the child support worksheet entered with the February 27, 2009 Agreed Order. The evidence does not preponderate against the trial court's finding, and we affirm the trial court's findings with respect to Father's income.

Finally, Mother requests that she be awarded attorney's fees incurred in the defense of this appeal. Tenn. Code Ann. § 27-1-122 allows this Court to make an award of fees upon a determination that the appeal was "frivolous or taken solely for delay." In light of the issues presented and the record, we do not find that this appeal is so devoid of merit as to warrant its characterization as frivolous within the contemplation of Tenn. Code Ann. § 27-1-122. *See Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (citing *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998) ("An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success."). Therefore, we decline to award attorneys fees.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed against Larry Glen Womble, II.

_____
RICHARD H. DINKINS, JUDGE